# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

MARCOS MARTINEZ,

          Plaintiff,

    v.

ANDREW SAUL,
Commissioner of Social Security,[1]

          Defendant.

_____/

Case No. 1:19-cv-00074-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.     INTRODUCTION

On January 16, 2019, Plaintiff Marcos Martinez ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on September 12, 2019).  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    BACKGROUND

On March 12, 2015, Plaintiff protectively applied for SSI, alleging disability beginning December 23, 2014, due to congestive heart failure and heart problems. (Administrative Record ("AR") 26, 78, 82, 91, 105, 180, 186, 195, 198, 202, 219, 230.) Plaintiff was born on October 23, 1964 and was 50 years old on the alleged disability onset date. (AR 33, 78, 90, 91, 102, 198, 219, 230.) Plaintiff has a tenth-grade education and can communicate in English. (AR 33, 47, 201, 203.)

**A.    Relevant Medical Evidence[3]**

**1.    Community Medical Center**

On December 25, 2014, Plaintiff presented at the emergency department complaining of shortness of breath. (AR 514–24.) An echocardiogram was normal. (516.) On physical examination, Plaintiff was noted to be obese. (AR 521, 522.) He was positive for tachycardia, but with a regular rhythm, normal S1 and S2, with no murmur, gallop, or friction rub. (AR 521.) "Displaced PMI" was noted. (AR 521.) Plaintiff had a normal respiratory rate and effort, with breath sounds clear to auscultation, except that mild rales in bibasal lungs were noted. (AR 521.) His range of motion was normal, with no venous stasis, deformity, effusion, but pitting bipedal dependent edema was noted. (AR 521.) A chest x-ray revealed cardiomegaly and bronchitis. (AR 522.) He was diagnosed with congestive heart failure, rule out cardiomyopathy, and was admitted to the hospital. (AR 523.) Plaintiff left the hospital against medical advice on December 26, 2014. (AR 524.)

On February 9, 2015, Plaintiff presented to the emergency department complaining of difficulty breathing, having run out of his congestive heart failure medication two weeks prior. (AR 466–79.) Plaintiff reported having last used methamphetamine in November/December 2014, but his urine tested positive for the drug. (AR 475.) Plaintiff's physical examination showed normal breath sounds and no respiratory distress. (AR 467.) He had a regular cardiovascular

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)
[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

rhythm but with tachycardia. (AR 467.) After being admitted for three days, his symptoms improved, and he was discharged in stable condition. (474, 476.)

Plaintiff again returned to the emergency department on March 27, 2015, complaining of shortness of breath and chest pain. (AR 524–36.) On physical exam at the time of admission, his heart rate and rhythm were normal, with no murmur, gallop, or friction rub. (AR 530.) Wheezing on both sides of his lungs was noted, and they appeared to be poor in air exchange. (AR 530.) Plaintiff's range of motion in his extremities was normal, with no venous stasis, deformity, effusion, local swelling, or positive edema. (AR 530.) Plaintiff spent two days in the hospital, after which his complaints were deemed "completely resolved." (AR 533.) A physical examination prior to discharge was normal, with normal respiratory rate and clear breath sounds to auscultation. (AR 534.) Plaintiff was referred to the heart failure and the chronic obstructive pulmonary disease (COPD) clinic. (AR 536.)

On April 2, 2015, Plaintiff presented to the heart failure and COPD clinic to establish care. (AR 537.) He was seen by Shradha Rathi, M.D. (AR 536–42.) Plaintiff reported that he continues to have shortness of breath, dyspnea on exertion when walking a few feet, and paroxysmal nocturnal dyspnea. (AR 537, 601.) Dr. Rathi noted Plaintiff's history of noncompliance with treatment, specifically that he had had "[r]ecurrent hospital admissions for COPD and congestive heart failure." (AR 537, 601.) He was prescribed medication for his symptoms. (AR 541–42.)

That same day (April 2, 2015), Dr. Rathi completed a "Residual Functional Capacity [RFC][4] Questionnaire." (AR 508–10.) She opined Plaintiff is able to lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk one hour in an eight-hour workday; and sit three hours total in an eight-hour workday. (AR 508.) Dr. Rathi further opined Plaintiff is unable to walk a city block without rest or significant pain and he will need to take unscheduled

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

3

breaks during an eight-hour workday. (AR 508.) According to Dr. Rathi, Plaintiff would likely be absent from work once or twice a month. (AR 509.) Dr. Rathi also opined Plaintiff is not physically capable of working an eight-hour day, five days a week on a sustained basis. (AR 509.)

Plaintiff returned to Dr. Rathi on April 16, 2015, for a follow up appointment. (AR 542–48.) His history of noncompliance with treatment was again noted. (AR 543, 607.) Plaintiff's physical examination was normal and Dr. Rathi noted that his symptoms had "markedly improved." (AR 547.) Plaintiff denied shortness of breath, dyspnea on exertion, and paroxysmal nocturnal dyspnea. (AR 547.)

**2.      St Agnes Medical Center**

On January 1, 2015, Plaintiff was admitted with symptoms of having difficulty breathing at rest and on exertion. (AR 279–465.) Evaluation revealed congestive heart failure. (AR 279.) On physical examination, Plaintiff had edema, but regular heart rate and respiration. (AR 324.) His range of motion was normal with no tenderness. (AR 324.) He was discharged on January 4 in stable condition with improvement in symptoms and an ability to ambulate. (AR 279.)

Plaintiff was brought by ambulance to the emergency department with nausea and vomiting on May 29, 2017. (AR 770–835.) He also complained of shortness of breath and abdominal pain. (AR 776, 812.) Tachycardia was noted. (AR 777.) Plaintiff denied substance abuse (AR 814, 817), yet his urine test was positive for amphetamine (AR 778).

**3.      Than Aw, M.D.**

On April 30, 2015, Plaintiff presented to Than Aw, M.D., for treatment of congestive heart failure, cough, and asthma. (AR 574–78, 596–600.) Dr. Aw noted Plaintiff's congestive heart failure was improving and was managed with ACE inhibitor therapy. (AR 574, 596.) Plaintiff was noted as having "[q]uit drugs and smoking and getting better." (AR 574, 596.) His cough had also improved. (AR 574, 596.) Dr. Aw's physical examination of Plaintiff was normal, including normal respiratory and cardiovascular results, but right shoulder pain was noted. (AR 577, 599.)

On November 9, 2015, Plaintiff saw Dr. Aw for a cardiology and congestive heart failure follow-up appointment. (AR 677–82.) He was assessed with unspecified heart failure, which was stable, and obesity. (AR 681.) He was noted to have started working as a result of being denied

disability.  (AR 677.)

Plaintiff again presented to Dr. Aw for medication refills and weight gain on February 8, 2016.  (AR 670–76.)  He was assessed with unspecified heart failure, which was stable, and obesity.  (AR 675.)  Plaintiff was noted to be tolerating medication.  (AR 675.)

Plaintiff saw Dr. Aw on April 25, 2016, for hypertension and medication refills.  (AR 663–69.)  His physical examination was normal, but morbid obesity was noted.  (AR 665.)

On May 3, 2017, Plaintiff presented to Dr. Aw complaining of shortness of breath.  (AR 746–51.)  His physical examination was normal.  (AR 750.)  Plaintiff was prescribed a nebulizer to treat his shortness of breath.  (AR 750.)  A cardiologist had recommended inserting a defibrillator to treat Plaintiff's congestive heart failure, to which Plaintiff was "resistant."  (AR 751.)

**4.      State Agency Physicians**

On May 4, 2015, C. De la Rosa, M.D., a Disability Determinations Service medical consultant, assessed Plaintiff's RFC and found that Plaintiff could (1) occasionally lift and/or carry 50 pounds and frequently 25 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions.  (AR 86.)  Plaintiff could occasionally climb ladders, ropes, and scaffolds, with no other postural limitations.  (AR 86.)  Plaintiff was also to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  (AR 87.)

Upon reconsideration on August 18, 2015, another Disability Determinations Service medical consultant, Richard Betcher, M.D., disagreed with Dr. De La Rosa's RFC findings, and opined instead that Plaintiff could (1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions.  (AR 98.)  Plaintiff could frequently climb stairs and occasionally climb ladders, ropes, and scaffolds, with no other postural limitations.  (AR 98.)  Plaintiff was also to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  (AR 99.)

**5.    Sam Borno, M.D.**

On December 22, 2016, Plaintiff presented for a cardiac consultation with Dr. Borno.  (AR 629–34.)  Plaintiff complained of heart failure.  (AR 629.)  His physical examination was normal, including a normal gait.  (AR 630.)  Dr. Borno also noted that Plaintiff was able to exercise.  (AR 630.)

Plaintiff underwent a carotid ultrasound, which was normal, with "[n]o atheromatous plaques visualized."  (AR 633.)  An echocardiogram showed "[m]arked global hypokinesia with an ejection fraction of 20%," "[m]ild left ventricular dilatation," a "mildly enlarged" left atrium, and "diastolic dysfunction."  (AR 634.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 29, 2015, and again on reconsideration on August 19, 2015.  (AR 105–109, 113–118.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 119–21.)  The ALJ conducted a hearing on June 14, 2017.  (AR 39–77.).  Plaintiff appeared at the hearing with his counsel and testified.  (AR 46–73.)  A vocational expert also testified.  (AR 73–76.)

**1.    Plaintiff's Testimony**

Plaintiff testified that he has trouble breathing, which causes him not to be able to work.  (AR 56.)  His breathing issues are worse at night and when it is hot outside.  (AR 60.)  Plaintiff stated that there are certain positions where "it really gets to me really bad."  (AR 60.)  He uses an inhaler and a nebulizer to treat his COPD.  (AR 58.)  With respect to his heart issue, Plaintiff testified that he couldn't recall whether he used methamphetamine in December 2016, when his injection fraction went from 50 percent to 20 percent, but stated that he "might have, but I'm not too positive."  (AR 57.)

Plaintiff testified that he cannot walk very far and can only lift "a couple gallons of milk, and not very far."  (AR 54–55, 69.)  He can stand only about a half hour before having to sit down because his back and knees get "stiff" and "tired."  (AR 66–67.)  According to Plaintiff, after a short walk he must take a break to catch his breath.  (AR 67.)  He has trouble sleeping lying down and takes three to four naps for about an hour long each.  (AR 68–69.)

## 2. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a "heater tender," Dictionary of Operational Titles (DOT) code 553.665-038, which was heavy exertional work as performed (customarily performed as medium), with a specific vocational preparation (SVP)[5] of 2. (AR 74.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work experience. (AR 74.) The VE was also to assume this person was capable of a range of light exertional work, with the following limitations: lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing and/or walking for six to eight hours in an eight-hour workday; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes and scaffolds; and no exposure to pulmonary irritants of fumes, dusts, gases, odors, other chemical fumes, and extreme heat. (AR 74.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other, light jobs in the national economy for which a person could alternate positions, such as cashier, DOT code 211.462-010 with an SVP of 2; an information clerk, DOT code 237.367-018 with an SVP of 2; and an office helper, DOT code 239.567-010 with an SVP of 2. (AR 74–75.)

The ALJ asked the VE, in a second hypothetical, whether an individual in the first hypothetical who would also need to take additional unscheduled breaks of two to three per day of about 20 minutes each could perform Plaintiff's past work or any work in the national economy. (AR 75.) The VE testified that that there would be no work that such individual could perform. (AR 75.) Plaintiff's counsel asked the VE whether the fact that an individual would need to lie down during the workday during periods of expected productivity would result in them being off task or needing to take an extra break. (AR 76.) The VE answered affirmatively. (AR 76.)

## C. The ALJ's Decision

In a decision dated October 12, 2017, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 26–34.) The ALJ conducted the five-step disability analysis set forth in

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

20 C.F.R. § 416.920.  (AR 28–34.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since March 11, 2015, the application date (step one).  (AR 28.)  At step two, the ALJ found Plaintiff's following impairments to be severe: substance-induced congestive heart failure; methamphetamine abuse; and chronic obstructive pulmonary disease (COPD).  (AR 29.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 29.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . .  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform a range of work at the light exertional level as defined in 20 CFR [§] 416.967(b).  Specifically, he is able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours, and sit six hours in an eight-hour workday.  He can frequently climb ramps or stairs and occasionally climb ladders, ropes, or scaffolds.  In addition, [Plaintiff] must avoid all exposure to extreme heat, fumes, dusts, gases, odors, and other pulmonary irritants..

(AR 29–30.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 32.)

The ALJ found that Plaintiff could not perform his past relevant work as a heater tender (step four).  (AR 32–33).  Nonetheless, the ALJ determined that Plaintiff could perform alternate jobs that exist in significant numbers in the national economy, such as cashier, information clerk, and officer helper (step five).  (AR 33–34).  Ultimately, the ALJ concluded that Plaintiff was not disabled at any time through the date of her decision.  (AR 34.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 27, 2018.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

///

# III.    LEGAL STANDARD

## A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

1989)).  "However, if a claimant establishes an inability to continue [his] past work, the burden

shifts to the Commissioner in step five to show that the claimant can perform other substantial

gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only]

when the ALJ's findings are based on legal error or are not supported by substantial evidence in

the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence" means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

305 U.S. 197, 229 (1938)).  "Substantial evidence is more than a mere scintilla but less than a

preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  The Court

"must consider the entire record as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating

a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.

2007) (citation and internal quotation marks omitted).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.

Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ's decision denying benefits "will be disturbed

only if that decision is not supported by substantial evidence or it is based upon legal error."

*Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the

ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*;

*see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational

interpretation, the court may not substitute its judgment for that of the Commissioner." (citations

omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for

that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court

must determine whether the Commissioner applied the proper legal standards and whether

substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v.

Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be

affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis*, 498 F.3d at 911.

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred in assessing the opinion of treating physician Dr. Rathi, in evaluating Plaintiff's credibility, and in not finding Plaintiff's obesity a "severe" impairment. (*See* Doc. 19 at 12–25; Doc. 23 at 1–10.) Defendant counters that the ALJ properly evaluated both Dr. Rathi's opinion and Plaintiff's obesity, and that substantial evidence supports the ALJ's discrediting of Plaintiff's subjective complaints. (*See* Doc. 22 at 13–23.)

### A.  The ALJ Appropriately Assessed the Opinion of Dr. Rathi

#### 1.  Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security

cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.; Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001)[6], except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

opinion rejected); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

**2.  Analysis**

It is uncontested that Dr. Rathi treated Plaintiff, and thus is considered a treating physician. She opined that Plaintiff is able to lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk one hour in an eight-hour workday; and sit three hours total in an eight-hour workday. (AR 508.) Dr. Rathi further opined Plaintiff is unable to walk a city block without rest or significant pain and he will need to take unscheduled breaks during an eight-hour workday. (AR 508.) According to Dr. Rathi, Plaintiff would likely be absent from work once or twice a month. (AR 509.) Dr. Rathi concluded by opining that Plaintiff is not physically capable of working an eight-hour day, five days a week on a sustained basis. (AR 509.)

As the ALJ noted (*see* AR 31), Dr. Rathi's opinion is contradicted by the medical opinion evidence of Disability Determinations Service medical consultant Dr. Betcher. Dr. Betcher opined that Plaintiff could stand, walk, and/or sit up to six hours in an eight-hour workday and could lift and carry 10 pounds frequently and 20 pounds occasionally. (AR 98.) Having found that Dr. Rathi's opinion conflicted with that of Dr. Betcher, the ALJ was therefore obliged to provide specific and legitimate reasons for rejecting Dr. Rathi's opinions. *Trevizo*, 871 F.3d at 675.

In reviewing the medical evidence and giving "very little weight" to Dr. Rathi's opinion, the ALJ stated that it is:

> inconsistent with the medical and other evidence. For example, it is inconsistent with the unremarkable physical examination findings, which showed a normal range of motion with no tenderness. The opinion is also inconsistent with the other medical opinions of record and it is over-restrictive especially in light of [Plaintiff's] history of noncompliance with treatment. In addition, an inability to walk a city block without rest or significant pain is inconsistent with a report showing he ambulated with a normal gait and was able to exercise. Finally, the opinion is discounted because Dr. Rathi first saw the claimant on April 2, 2015, which is the same day she completed the form, thus, there is no history of treatment upon which to base the opinion.

(AR 31 (citations omitted).)

An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including their own treatment notes. *See Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings") (citing *Tonapetyan*, 242 F.3d at 1149); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected the opinion of treating physician, where treating physician's opinion was inconsistent with his own examination and notes of claimant); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings).

Here, the ALJ properly rejected Dr. Rathi's assessment of Plaintiff because it was not supported by the objective medical evidence and other evidence, particularly Plaintiff's normal physical examination findings from the time period both before and after Dr. Rathi's April 2, 2015 assessment. As the ALJ noted (AR 31), on January 1, 2015, Plaintiff's physical examination revealed edema, but regular heart rate and respiration. (AR 324.) His range of motion was normal with no tenderness. (AR 324.) On February 9, 2015, Plaintiff's physical examination showed normal breath sounds, no respiratory distress, and no edema. (AR 467.) He had a regular cardiovascular rhythm, and, although tachycardic, he tested positive for methamphetamine. (AR 467.) The ALJ further noted (AR 31) that Dr. Aw's physical examination of Plaintiff on April 30, 2015, was normal, including normal respiratory and cardiovascular results. (AR 577, 599.) Plaintiff's physical examination during his December 22, 2016 cardiac consultation with Dr. Borno was normal, including a normal gait. (AR 630.) Dr. Borno also found that Plaintiff was able to exercise. (AR 630.) As the ALJ observed (AR 31), Plaintiff's physical examination on May 3, 2017, was also normal. (AR 750.) Such normal findings, particularly with respect to Plaintiff's respiratory and cardiovascular functioning, fail to support Dr. Rathi's opinion that Plaintiff was so significantly impaired that he is not physically capable of working an eight-hour day, five days a

week, on a sustained basis, even with some limitations.

In addition, as the ALJ pointed out (AR 31), Dr. Rathi's own treatment notes showing Plaintiff's "history of noncompliance" undermine the opined limitations. Dr. Rathi's April 2, 2015 treatment record, written *on the same day* she completed the RFC questionnaire, noted Plaintiff's history of noncompliance with treatment, specifically that he had had "[r]ecurrent hospital admissions for COPD and congestive heart failure" and had left the hospital against medical advice in December 2014. (AR 537, 601.) Dr. Rathi again noted Plaintiff's history of noncompliance on April 16, 2015. (AR 543, 607.) Plaintiff's lack of compliance with his treatment suggests that his symptoms may not have been as limiting as he alleged—and certainly not as limiting as Dr. Rathi opined. *See McDonald v. Berryhill*, No. 1:16–cv–01477–SKO, 2018 WL 1142192, at *14 (E.D. Cal. Mar. 2, 2018) (treating physician's opinion properly discredited where evidence showed that the plaintiff had not been entirely compliant in taking prescribed medications); *Vongdeng v. Colvin*, 2:15-cv-1071–CKD, 2016 WL 3126121, at *4 (E.D. Cal. Jun. 2, 2016) (same).

Finally, the ALJ did not err in discounting Dr. Rathi's assessment because it was based on one single office visit. (AR 31.) As noted above, the ALJ gave reduced weight to Dr. Rathi's opinion because "there is no history of treatment upon which to base the opinion." (AR 31.) In assigning weight to a treating physician's opinion, the regulations expressly permit an ALJ to consider the length and frequency of the treatment relationship. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). In this instance, as the ALJ correctly points out, Dr. Rathi first saw Plaintiff on April 2, 2015, which is the same day she completed the RFC questionnaire. (*See* AR 31. *See also* AR 508–10, 536–42.)

Plaintiff also contends the ALJ improperly substituted his own lay opinion as that of a medical source or otherwise improperly imposed his own lay interpretation of the medical evidence. (*See* Doc. 19 at 14; Doc. 23 at 3.) This argument is unavailing. Although an ALJ may not base his or her decision on "his [or her] own [medical] expertise." *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982), the ALJ, however, is free to choose "between properly submitted

medical opinions," or, as here, between a medical opinion and other objective medical evidence in the record. *Gober v. Matthews*, 574 F.2d 772, 777 (3rd Cir. 1978). In this case the ALJ did not improperly substitute her lay opinion for that of a medical doctor, but rather properly exercised her responsibility to evaluate the medical evidence in the record: she discussed the evidence presented, noted where the medical opinions were contradictory, and provided reasons for giving particular opinions less weight. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998) (ALJ has duty to determine credibility and resolve ambiguities and conflicts in medical evidence); *see also Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601, 603 (9th Cir. 1999); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

In sum, the ALJ identified ample medical evidence in the record that undermines Dr. Rathi's opinion that Plaintiff is not physically capable of working an eight-hour day, five days a week on a sustained basis. (AR 509.) This, along with a lack of treating history to support the opinion, *see* 20 C.F.R. § 404.1527(c)(2)(i), is a specific, legitimate reason supported by substantial evidence for discounting the opinion of Dr. Rathi. [7] *See Magallanes*, 881 F.2d at 751; *see also Batson.*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957. As the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner, it will therefore not disturb the ALJ's finding on this basis, even if, as Plaintiff points out (*see* Doc. 19 at 16–19), some of the above-described evidence could be construed more favorably to him. *See Robbins*, 466 F.3d at 882; *Thomas*, 278 F.3d at 954 (Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

**B.      The ALJ Properly Found Plaintiff Less Than Fully Credible**

   **1.      Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

---

[7] The Court's affirmance of the ALJ's finding that Dr. Charles' opinions were not supported by the medical record applies with equal force to Plaintiff's suggestion that the opinions gave rise to a closed period of disability from Plaintiff's alleged onset date of March 13, 2009, through October 5, 2011, the date of Dr. Charles' last report. (*See* Doc. 12 at 10.)

must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226–27. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

**2.    Analysis**

As set forth above, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 32.) The ALJ also found that

"[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 32.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Here, the ALJ found Plaintiff's credibility was undermined by several factors: inconsistent statements made to his physicians regarding his substance use; the objective medical evidence; and his noncompliance with prescribed treatment. (AR 32.) The Court takes each finding in turn.

### a.    Inconsistent Statements

The ALJ also found that Plaintiff "made several inconsistent statements regarding his substance use." (AR 32.) Specifically, the ALJ pointed out that during a hospital visit in February 2015 Plaintiff reported last taking methamphetamine in November-December 2014, but a urine toxicology screen from that visit was positive for the drug. (AR 32, 475.) In addition, the ALJ observed that at another hospital visit in May 2017 Plaintiff denied substance abuse (AR 814, 817), yet his urine test was positive for amphetamine (AR 778). (AR 32.)

Inconsistent statements regarding drug use can be "substantial evidence in the record [to] support [] the ALJ's negative conclusions about [the plaintiff's] veracity." *Thomas*, 278 F.3d at 959. The ALJ may consider whether the Plaintiff's testimony is believable. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). "In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch*, 400 F.3d at 680; *see also Thomas*, 278 F.3d at 959 (supporting the ALJ's finding that a "lack of candor" regarding the use of drugs "carries over" to the plaintiff's description of her disabling condition).

Plaintiff is correct that illegal drug use, standing alone, has no bearing on Plaintiff's credibility (*See* Doc. 19 at 20–21; Doc. 23 at 8–9). *See, e.g., Buck v. Astrue*, No. 3: 10–cv–05519–KLS, 2011 WL 2600505, at * 11 (W.D. Wash. June 28, 2011). However, the mere fact that Plaintiff has a history of methamphetamine use is not a reason on which the ALJ's credibility determination

was based; it was, instead, Plaintiff's inconsistent statements about that use for which his subjective complaints were discredited. Accordingly, the ALJ made a clear and convincing determination that Plaintiff's inconsistent statements impacted his credibility. *See, e.g., Vasquez v. Astrue*, No. 1:11-CV-00853-SKO, 2012 WL 4433565, at *15 (E.D. Cal. Sept. 24, 2012) (finding Plaintiff's inconsistent statements regarding her substance abuse history a clear and convincing reason for the ALJ to discredit her testimony).

### b. Objective Medical Evidence

The ALJ's next ground for discounting Plaintiff's credibility is that his allegations of significant limitations are inconsistent with the objective medical evidence, specifically Plaintiff's normal physical examination findings. (AR 32.) "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Ondracek v. Comm'r of Soc. Sec.*, Case No. 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*, 400 F.3d at 680); *see also, e.g., Rollins*, 261 F.3d at 857 ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence . . . ."). Nonetheless, "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.2004); *Morgan*, 169 F.3d at 600. Stated differently, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." *Salas v. Colvin*, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

Here, Plaintiff testified that he has trouble breathing, which causes him not to be able to work. (AR 56.) He stated that he can stand only about a half hour before having to sit down because his back and knees get "stiff" and "tired." (AR 66–67.) According to Plaintiff, after a short walk he must take a break to catch his breath. (AR 67.) However, as the ALJ observed (AR 32), and as set forth more fully above (*see* Section IV.A.2, *supra*), Plaintiff's physical examinations

in January, February, and April 2015 showed normal respiratory, cardiovascular, and musculoskeletal functioning. (AR 324, 467, 577, 599.) The ALJ noted that Plaintiff continued to have normal physical examination results in December 2016 and May 2017. (AR 630, 750.) These findings are supported by substantial evidence and constitute yet an additional clear and convincing reason the ALJ reasonably discounted the severity of Plaintiff's subjective complaints. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (concluding that the ALJ properly discredited claimant testimony based on inconsistencies with objective medical evidence).

### c.      Lack of Compliance with Treatment

The ALJ's final ground for discounting Plaintiff's credibility is that the alleged severity of his impairments is "inconsistent with his history of noncompliance with prescribed treatment." (AR 32.) The ALJ noted Plaintiff's history of noncompliance found in the records of his treating physician Dr. Rathi. (AR 32.) In those records, Dr. Rathi observed in April 2015 that Plaintiff had had "[r]ecurrent hospital admissions for COPD and congestive heart failure" and had left the hospital against medical advice in December 2014. (AR 537, 601.) Dr. Rathi again noted Plaintiff's history of noncompliance with treatment in April 2015. (AR 543, 607.)

In evaluating a claimant's claimed symptoms, an ALJ may consider a claimant's failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti*, 533 F.3d at 1039–40; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). In so doing, however, an ALJ must consider a claimant's explanation for failing to undergo the recommended treatment. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). As the Ninth Circuit explained in *Fair v. Bowen*, it is the claimant's burden to adequately explain his or her failure to follow a prescribed course of treatment. 885 F.2d at 603 (claimant's failure to explain failure to seek treatment or follow a prescribed course of treatment can "cast doubt" on the sincerity of his testimony); *see also Smolen*, 80 F.3d at 1293. An ALJ may discount a claimant's credibility due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039.

Here, Plaintiff's briefing does not address the ALJ's reliance on evidence of Plaintiff's lack of compliance with treatment as reason to discredit his subjective complaints, other than to

characterize it as "cherry-picked." (*See* Doc. 19 at 21.) Plaintiff therefore proffers no explanation for his failure to follow his prescribed course of treatment, including taking his medication. (*See* AR 467 ("Plaintiff is not compliant with [congestive heart failure] meds and states he has been out of his medications for the past two months.").) In view of Plaintiff not having met his burden of adequately explaining his failure to follow his treatment regimen, *see Fair*, 885 F.2d at 603, and viewing the record as a whole, the Court finds that ALJ's conclusion that Plaintiff was non-compliant with taking medication is supported by substantial evidence. The ALJ's determination that Plaintiff was non-compliant with his use of prescribed treatment is therefore another clear and convincing reason for discounting Plaintiff's subjective symptom testimony. *Tommasetti*, 533 F.3d at 1039.

In sum, the Court finds that the ALJ offered multiple clear and convincing reasons to discredit Plaintiff's testimony regarding the extent of his limitations. While Plaintiff may disagree with the ALJ's interpretation of the medical evidence (*see* Doc. 19 at 21), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins*, 261 F.3d at 857 (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

## C.     The ALJ Properly Evaluated the Effects of Plaintiff's Obesity

Finally, Plaintiff contends that the ALJ erred in failing to find a Plaintiff's obesity a severe impairment at step two; in failing to consider the effect of the obesity on the Listings at step three; and in failing to consider his obesity in determining his RFC. (Doc. 19 at 22–25.) The Court disagrees.

Social Security Ruling 02-1p directs that an ALJ "do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." TITLES II & XVI: EVALUATION OF OBESITY, Social Security Ruling ("SSR") 02-1p, 2002 WL 34686281 (S.S.A. Sept. 12, 2002).[8] An impairment qualifies as severe if "alone or in combination with another medically determinable physical or mental impairment(s), it

---

[8] Plaintiff cites to Social Security Ruling 19-2p as the relevant authority for evaluation of obesity. (*See* Doc. 19 at 22–23.) However, the ALJ issued the instant decision on October 12, 2017, prior to the May 20, 2019 effective date of SSR 19-2p. Thus, Social Security Ruling 02-1p provides the relevant guidance for evaluating obesity.

significantly limits an individual's physical or mental ability to do basic work activities." *Id.* Social Security Ruling 02-1p directs that "[the ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.* Rather, "[the ALJ] will evaluate each case based on the information in the case record." *Id.* The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

### 1. The ALJ Did Not Err at Step Two

In this case, the ALJ noted at step two that Plaintiff was assessed by physicians as obese, but found the impairment was not severe because it did not cause more than a "minimal limitation in his ability to perform basic work activities." (AR 29 (citing AR 522, 630, 665, 675, 681).) In support of her finding, the ALJ pointed to Plaintiff's history of normal physical examinations, including with respect to Plaintiff's respiratory and cardiovascular functioning, as well as his normal musculoskeletal examination results and noted ability to exercise (as described more fully above, *see* Section IV.A.2, *supra*). (AR 29 (citing AR 324, 467, 577, 599, 630, 750).) Plaintiff contends that obesity "exacerbate[ed] his limited cardiac and respiratory functioning" (Doc. 19 at 22) and cites treatment records from a single hospital visit in December 2014 (AR 514, 521, 524). These treatment records, however, merely note that Plaintiff experienced shortness of breath symptoms "with associated weight gain"—they do not discuss or contain any limitations related to Plaintiff's obesity, either alone or as exacerbating any other condition. Other than citing to these records, Plaintiff does not specify how his obesity limits his functional capacity, or how it exacerbates his currently existing conditions.

It is the plaintiff's obligation to establish a connection between his excessive weight, impairments, and any relevant functional limitations. *See Burch*, 400 F.3d at 683. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id. See also Garcia v. Comm'r of SSA*, 498 F. App'x 710, 712 (9th Cir. 2012) (the ALJ's finding that obesity did not impact the RFC was proper where the Plaintiff "did not provide any evidence of functional limitations due to obesity which would have impacted the

ALJ's analysis") (internal quotation marks omitted); *Hoffman v. Astrue*, 266 F. App'x 623, 625 (9th Cir. 2008) ("The ALJ's failure to consider Hoffman's obesity in relation to his RFC was proper because Hoffman failed to show how his obesity in combination with another impairment increased the severity of his limitations."). Here, there is simply no evidence of any functional limitations as a result of Plaintiff's obesity that the ALJ should have, yet failed, to consider. Although Plaintiff's physicians noted his weight in treatment notes, it does not appear that any physician indicated his obesity either caused or exacerbated his impairments or resulted in any functional limitations whatsoever. Plaintiff has identified no medical records that the ALJ might have overlooked stating otherwise.

Additionally, Plaintiff did not raise his obesity as an impairment or limitation in his application for benefits or in his hearing testimony, instead focusing entirely on his other impairments. (*See, e.g*., AR 26, 60, 66–69, 78, 82, 91, 105, 180, 186, 195, 198, 202, 219, 230.) Plaintiff was represented by an attorney at the hearing, and neither of them offered any evidence or explanation to show how Plaintiff's obesity limited his ability to function or how his obesity exacerbates one or more of his conditions resulting in limitations. Although Plaintiff testified that he has trouble breathing, can stand only about a half hour before having to sit down because his back and knees get "stiff" and "tired," and can only walk a short distance before taking a break to catch his breath (AR 60, 66–69), this is contrast to Plaintiff's physical examinations in January 2015, February 2015, April 2015, and May 2017, which showed normal respiratory, cardiovascular, and musculoskeletal functioning, and a cardiac evaluation in December 2016 showing that Plaintiff can ambulate without difficulty and can exercise. (AR 324, 467, 577, 599, 630, 750.) Therefore, the undersigned finds no error in the ALJ's failure at step two to include obesity as a severe impairment.

### 2. The ALJ Did Not Err at Step Three

Plaintiff's argument the ALJ erred at step three by failing to consider the combined conditions of his congestive heart failure, obesity, and COPD to meet or equal Listing 4.00 and/or 4.02 is also without merit. (Doc. 19 at 22–23.) Title 42 U.S.C. § 423(d)(2)(C) requires that "the combined effect of all of the individual's impairments" be considered, "without regard to whether

any such impairment, if considered separately," would be sufficiently severe to meet a Listing. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.1990) (where claimant presented evidence that the combination of impairments established medical equivalence, ALJ's finding that "claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings," without more, was insufficient to show that the ALJ actually considered equivalence).

Here, the ALJ considered Plaintiff's impairments, both severe and non-severe, and found that they did not meet or medically equal Listing 4.02 either "singly or in combination" based on the medical evidence. (AR 29.) Plaintiff asserts that "[w]hen considering [L]isting 4.02 for chronic heart failure, the ALJ erred by failing to consider the effect of obesity in combination with Mr. Martinez's [congestive heart failure]" (Doc. 19 at 22), yet cites no evidence that the combination of his impairments equals this (or any other) Listing.[9] *See Burch*, 400 F.3d at 683 ("Plaintiff bears the burden of demonstrating that his impairment meets or equals a Listing."). *See also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (rejecting claimant's theory that his symptoms of seizure disorder and mental retardation equaled a listing when claimant did not offer a plausible theory or point to any evidence that his symptoms combined to equal a listed impairment). In sum, the ALJ did not err at step three in finding Plaintiff did not meet or equal a Listing.

### 3. The ALJ Did Not Err in Formulating Plaintiff's RFC

Lastly, Plaintiff contends that the ALJ also erred in failing to consider Plaintiff's obesity in combination with her other impairments in determining his RFC. (Doc. 19 at 24.) Plaintiff, however, fails to point to any specific functional limitation attributable to his obesity that was omitted from the RFC. Nor has he provided any evidence that his obesity exacerbated his reported physical impairments. Indeed, the only evidence on which Plaintiff relies for his contention merely notes that Plaintiff experienced shortness of breath symptoms "with associated weight gain," and does not discuss or contain any limitations related to Plaintiff's obesity, either alone or as exacerbating any other condition. (*See* AR 514, 521, 524.) The ALJ therefore was not required to

---

[9] Plaintiff also contends, without evidentiary support, that, when taking into account his obesity, he meets Listing 4.00. (*See* Doc. 19 at 25.)

include additional limitations not supported by the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164–65 (9th Cir. 2001).

## V.       CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:    **February 27, 2020**                    /s/ *Sheila K. Oberto*
                                   UNITED STATES MAGISTRATE JUDGE